(No. 78910.—

(No. 78944.—

*In re* P.S., a Minor (The People of the State of Illinois, Appellant, v. P.S., Appellee).—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN KIMERY, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RODERICK TURNER, Appellee.

*Opinion filed January 18, 1996.*

262

HARRISON, J., took no part.

James E. Ryan, Attorney General, of Springfield, and David R. Akemann, State's Attorney, of St. Charles (Norbert J. Goetten, William L. Browers and Lisa A. Hoffman, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

Fred M. Morelli, Jr., of Morelli, Cook & Petersen, of Aurora (Vincent Argento, of counsel), for appellee.

*Amicus curiae* Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Thomas A. Konczal and Janet Powers Doyle, Assistant State's Attorneys, of counsel).

James E. Ryan, Attorney General, of Springfield, and David R. Akemann, State's Attorney, of St. Charles (Norbert J. Goetten, William L. Browers and Lisa A. Hoffman, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

Fred M. Morelli, Jr., of Morelli, Cook & Petersen, of Aurora (Vincent Argento, of counsel), for appellee.

*Amicus curiae* Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Thomas A. Konczal and Janet Powers Doyle, Assistant State's Attorneys, of counsel).

JUSTICE MILLER delivered the opinion of the court:

The sole question presented in these consolidated appeals is whether the constitutional guarantees against double jeopardy prohibit a criminal prosecution following a civil forfeiture judgment based on the same conduct. (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10.) Although this court rejected a similar claim in *People v. 1988 Mercury Cougar* (1992), 154 Ill. 2d 27, the appellate court concluded that a contrary conclusion was mandated by recent United States Supreme Court decisions. (See *Department of Revenue v. Kurth Ranch* (1994), 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937; *Austin v. United States* (1993), 509 U.S. 602, 125 L. Ed. 2d 488, 113 S. Ct. 2801.) In resolving the issue on appeal, we are therefore called upon to reconsider our decision in *1988 Mercury Cougar* in light of these recent Supreme Court decisions.

Defendants, P.S., a minor, John Kimery, and Roderick Turner, were each charged by complaint and/or indictment in the circuit court of Kane County with

violations of the Illinois Controlled Substances Act (Controlled Substances Act) (720 ILCS 570/100 *et seq.* (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 1100 *et seq.*)) or the Cannabis Control Act (720 ILCS 550/1 *et seq.* (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 701 *et seq.*)). In conjunction with defendants' arrest on these charges, police seized cash and/or an automobile, and the State subsequently sought forfeiture of these items under the Controlled Substances Act (720 ILCS 570/505 (West 1992)) or the Cannabis Control Act (720 ILCS 550/12 (West 1992)), and the Drug Asset Forfeiture Procedure Act (Forfeiture Act) (725 ILCS 150/1 *et seq.* (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 1671 *et seq.*)). In each case, the trial judge ordered the property forfeited. Defendants then moved to dismiss the criminal charges against them on double jeopardy grounds. The motions to dismiss were denied.

On appeal, the appellate court found that the civil forfeitures constituted punishment for double jeopardy purposes and that the forfeiture proceedings were separate from the criminal proceedings. The appellate court therefore concluded that further prosecution of defendants for the same offense that resulted in the prior forfeitures was barred by double jeopardy. Consequently, all criminal charges against defendants were dismissed. See 269 Ill. App. 3d 907; Nos. 2—93—1050, 2—93—1212 cons. (unpublished order under Supreme Court Rule 23).

We granted the State's separate petitions for leave to appeal in cause Nos. 78910 and 78944 and consolidated the causes on appeal for purposes of argument and disposition. (145 Ill. 2d R. 315(a).) We also granted leave to the Cook County State's Attorney to submit a brief as *amicus curiae* on behalf of the State. (134 Ill. 2d R. 345.) For the reasons that follow, we affirm in part and reverse in part the judgment of the appellate court in cause No. 78910 and reverse the judgment of the appellate court in cause No. 78944.

## BACKGROUND

### Cause No. 78944

The substantive facts in each case are undisputed and may be briefly summarized. Because the appellate court in the cases of P.S. and Kimery cited the appellate court's decision in Turner's case, we will begin by first reviewing the facts in Turner's case.

In No. 78944, defendant Turner, on January 5, 1993, was charged by indictment in the circuit court of Kane County with unlawful possession of a controlled substance (720 ILCS 570/402(a)(2) (West 1992)), unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2) (West 1992)), and unlawful possession of a controlled substance without a tax stamp (35 ILCS 520/10 (West 1992)). The indictment against Turner resulted from the execution of a search warrant on Turner's residence on December 10, 1992. During the execution of the search warrant, police seized cocaine and $2,165 in cash.

On December 23, 1992, before Turner was indicted, the State initiated an administrative forfeiture action against the $2,165 found in the search of Turner's home. (See 725 ILCS 150/6(A) (West 1992).) Turner thereafter filed a verified claim and cost bond with the Kane County State's Attorney, asserting his interest in the cash seized and requesting its return. (See 725 ILCS 150/6(C) (West 1992).) Because Turner contested the forfeiture, the State then instituted a judicial *in rem* forfeiture suit against the cash under the Controlled Substances Act (720 ILCS 570/505(a)(5) (West 1992)) and the Forfeiture Act (725 ILCS 150/7(1) (West 1992)). The forfeiture complaint alleged that the cash seized was subject to forfeiture because it was furnished or intended to be furnished in exchange for a substance in violation of the Controlled Substances Act or represented the proceeds of such an exchange. 720 ILCS 570/505(a)(5) (West 1992); 725 ILCS 150/7(1) (West 1992).

On August 20, 1993, a hearing was held in the forfeiture case. Following the hearing, the trial judge ordered the cash forfeited to the State. No appeal was taken from the forfeiture order.

On September 30, 1993, Turner moved to dismiss the pending criminal indictment against him on double jeopardy grounds. In the motion, Turner alleged that the actions forming the basis for the criminal proceeding were the same actions underlying the forfeiture proceeding. Citing *Austin*, Turner also alleged that the civil forfeiture of the cash constituted punishment for double jeopardy purposes. In light of the forfeiture, Turner contended that a subsequent criminal prosecution for the same offense that resulted in the forfeiture would violate the double jeopardy clauses of the United States and Illinois Constitutions (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10). On January 13, 1994, the trial judge denied the motion to dismiss.

On appeal, the appellate court concluded that the State's attempt to criminally prosecute Turner following the judicial forfeiture of the $2,165 violated the constitutional prohibition against double jeopardy. In reaching this conclusion, the court reviewed the Supreme Court's decisions in *United States v. Halper* (1989), 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892, *Austin*, *Kurth Ranch*, and the United States Court of Appeals for the Ninth Circuit's decision in *United States v. $405,089.23 United States Currency* (9th Cir. 1994), 33 F.3d 1210, *cert. granted* (U.S. January 12, 1996), No. 95—346. Relying primarily on these decisions, the appellate court concluded that the forfeiture of the cash constituted punishment for double jeopardy purposes. (269 Ill. App. 3d at 915.) The appellate court acknowledged that its decision conflicted with this court's decision in *1988 Mercury Cougar*, but reasoned that it was compelled to reach the opposite conclusion in light of

*Austin* and *Kurth Ranch*, which were decided after this court's decision in *1988 Mercury Cougar*. (269 Ill. App. 3d at 915.) This court in *1988 Mercury Cougar* held that the civil forfeiture of property following a criminal proceeding based on the same offense did not constitute a second punishment for double jeopardy purposes. (*1988 Mercury Cougar*, 154 Ill. 2d at 37.) The appellate court also determined that the forfeiture proceeding was separate from the criminal proceeding. In doing so, the court rejected the State's argument that the civil and criminal actions were part of a single, coordinated prosecution of Turner. (269 Ill. App. 3d at 916-18.) The appellate court vacated the trial judge's order denying Turner's motion to dismiss and dismissed with prejudice the criminal charges against him. We thereafter granted the State's petition for leave to appeal. 145 Ill. 2d R. 315(a).

Cause No. 78910

In No. 78910, defendant P.S. was charged by complaint in the circuit court of Kane County on May 4, 1991, with unlawful possession of cannabis (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 704(d)) and unlawful possession of cannabis with intent to deliver (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 705(d)). P.S. was also charged by indictment for these same offenses on July 21, 1992. The criminal charges against P.S. stemmed from the execution of a search warrant on May 3, 1991, against P.S.'s car, person, and residence. The search resulted in the seizure of numerous items, including cannabis, drug paraphernalia, a 1982 Cadillac Eldorado, and $1,627.22 in cash.

On September 3, 1991, while the criminal charges were pending against P.S., the State sought forfeiture of the cash under the Cannabis Control Act (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 712) and the Forfeiture Act (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 1679). The amended com-

plaint for forfeiture alleged that the cash was in close proximity to forfeitable substances and drug paraphernalia and therefore was itself subject to forfeiture. (Ill. Rev. Stat. 1991, ch. 56$^{1}$/$_{2}$, pars. 712, 1677.) In response to the forfeiture complaint, P.S. claimed to be the owner of the currency, but contended that the currency was not intended nor had it been used for any narcotics or controlled substance related purpose. P.S. therefore averred that the money was not subject to forfeiture. Following a bench trial in the forfeiture action on August 31, 1992, the trial judge found that the $1,627.22 was subject to forfeiture (see Ill. Rev. Stat. 1991, ch. 56$^{1}$/$_{2}$, par. 712(a)(5)) and ordered the cash forfeited to the State. No appeal was taken from this order.

On February 3, 1993, the criminal charges against P.S. were transferred to the juvenile court for adjudication. (See 720 ILCS 550/7(b) (West 1992).) The State then filed a petition for adjudication, requesting that the trial judge find P.S. delinquent based on the charges. P.S. subsequently moved to dismiss the criminal charges against him or, in the alternative, to stay the proceedings based on double jeopardy grounds. In the motion, P.S. contended that he had already been punished for his conduct as a result of the forfeiture of the cash and therefore could not be prosecuted for the same conduct in the juvenile proceeding without violating the double jeopardy clauses of the United States and Illinois Constitutions (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10).

On September 1, 1993, the motion was denied. P.S. then appealed the denial of his motion to the appellate court. The appellate court stayed the proceedings in the trial court pending resolution of the appeal. Relying primarily on *Austin*, *Kurth Ranch*, and *United States Currency*, the appellate court found that the forfeiture of the cash constituted punishment for double jeopardy

purposes. The court further determined that the forfeiture proceeding was separate from the criminal proceeding, rather than being part of a single, coordinated prosecution of P.S. The court therefore vacated the trial judge's order denying P.S.'s motion to dismiss and dismissed with prejudice the delinquency petition. (Nos. 2—93—1050, 2—93—1212 cons. (unpublished order under Supreme Court Rule 23).) The court also noted that its recent decision in *People v. Towns* (1995), 269 Ill. App. 3d 907, provided further support for its decision here.

Also, in No. 78910, defendant Kimery was charged by indictment in the circuit court of Kane County on ·October 22, 1991, with unlawful possession of a controlled substance (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 1402(c)). The charge stemmed from an alleged incident that occurred on October 6, 1991, which resulted in the seizure of Kimery's automobile.

On November 18, 1991, while the above charge was pending against Kimery, the State filed an *in rem* forfeiture action against Kimery's vehicle, a 1982 maroon Ford Mustang (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, pars. 1505(a)(3), 1679). The forfeiture complaint alleged that on October 6, 1991, police observed Kimery, the driver of the subject vehicle, stop the vehicle and speak to two males, one of whom was identified as Larry Harris. After speaking with Kimery, the two men proceeded to enter a nearby building and then returned to Kimery's car. Kimery then unlocked the passenger door and allowed Harris to enter the vehicle. The police next observed Kimery receive a small, white bag from Harris in exchange for two bills of United States currency. Following this transaction, officers conducted a stop of Kimery and Harris and recovered a plastic bag, later identified as containing cocaine, from Kimery. The complaint further alleged that Kimery was the registered

owner of the vehicle and that the vehicle was subject to forfeiture because it was used to facilitate the sale, receipt, possession, and concealment of a controlled substance (see Ill. Rev. Stat. 1991, ch. 56½, par. 1505(a)(3)).

Kimery subsequently appeared as owner-claimant in the forfeiture proceeding, seeking return of the vehicle. In Kimery's second-amended answer to the forfeiture complaint, he admitted that he was the owner of the car, but denied that it was used to facilitate the alleged drug transaction. Kimery therefore contended that the vehicle was not subject to forfeiture and requested its return. Following a bench trial on May 26, 1992, the vehicle was ordered forfeited to the State. The order was affirmed on appeal to the appellate court. See *People v. One 1982 Maroon Ford Mustang* (1994), 258 Ill. App. 3d 127.

On August 13, 1992, Kimery moved to dismiss the criminal charge against him on double jeopardy grounds. The motion was taken under advisement pending this court's decision in *1988 Mercury Cougar*. On April 12, 1993, defendant entered a plea of guilty. Prior to sentencing, Kimery moved to withdraw his guilty plea and dismiss the charges or, in the alternative, to stay sentencing. Relying in part on *Austin*, Kimery argued that the forfeiture of the car constituted punishment for double jeopardy purposes and therefore any further punishment for the same offense that resulted in the forfeiture was barred by double jeopardy. The trial judge denied Kimery's motion and sentenced him to one year's imprisonment. Execution of the sentence was stayed pending appeal.

On appeal, the appellate court consolidated Kimery's appeal with P.S.'s appeal for purposes of disposition only. As in P.S.'s case, the appellate court concluded that criminally prosecuting Kimery following the forfei-

ture of his automobile violated the double jeopardy clause. Accordingly, the appellate court vacated Kimery's conviction and sentence and dismissed with prejudice the criminal charges against him. (269 Ill. App. 3d 1138 (unpublished order under Supreme Court Rule 23).) We granted the State's petition for leave to appeal in cause No. 78910 and consolidated it with the State's appeal in cause No. 78944. 145 Ill. 2d R. 315(a).

## DISCUSSION

On appeal to this court, the State argues that the appellate court erred in finding that the double jeopardy clause barred the criminal prosecution of defendants following a civil asset forfeiture based on the same conduct that resulted in the forfeiture.

The double jeopardy clause of the fifth amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." (U.S. Const., amend. V.) Protections against double jeopardy are similarly guaranteed by the Illinois Constitution of 1970, which provides that "[n]o person shall be *** twice put in jeopardy for the same offense." (Ill. Const. 1970, art. I, § 10.) In raising their constitutional claims in the trial court, defendants relied on both the Federal and State Constitutions. Neither the State nor the defendants have argued, however, that a double jeopardy analysis under the State constitution should differ from an analysis under the Federal Constitution. (See *People v. Levin* (1993), 157 Ill. 2d 138, 160 (finding no indication that the double jeopardy clause of the Illinois Constitution was intended to be construed differently than the Federal provision).) We therefore analyze the State's argument here only under the double jeopardy clause of the fifth amendment to the Federal Constitution.

The constitutional prohibition against double jeop-

ardy safeguards against three distinct abuses: (1) a second prosecution after acquittal; (2) a second prosecution after conviction; and (3) multiple punishments for the same offense. (*Kurth Ranch*, 511 U.S. at 769 n.1, 128 L. Ed. 2d at 773 n.1, 114 S. Ct. at 1941 n.1; *Schiro v. Farley* (1994), 510 U.S. 222, 230, 127 L. Ed. 2d 47, 56, 114 S. Ct. 783, 789; *Halper*, 490 U.S. at 440, 104 L. Ed. 2d at 496, 109 S. Ct. at 1897; *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 23 L. Ed. 2d 656, 664-65, 89 S. Ct. 2072, 2076; see also *Levin*, 157 Ill. 2d at 144; *Rehg v. Illinois Department of Revenue* (1992), 152 Ill. 2d 504, 521.) It is the third of these protections—the bar against multiple punishments—that is the subject of this appeal. The multiple-punishment prong of the double jeopardy clause protects against the State's seeking multiple punishments for the same offense in separate proceedings. (*Helvering v. Mitchell* (1938), 303 U.S. 391, 399, 82 L. Ed. 917, 922, 58 S. Ct. 630, 633.) It does not, however, prohibit the State from seeking multiple punishments in the same proceeding or trial, provided that the total punishment does not exceed that authorized by the legislature. *Halper*, 490 U.S. at 450, 104 L. Ed. 2d at 503, 109 S. Ct. at 1903; *Kurth Ranch*, 511 U.S. at 778, 128 L. Ed. 2d at 778, 114 S. Ct. at 1945; *Missouri v. Hunter* (1983), 459 U.S. 359, 368-69, 74 L. Ed. 2d 535, 543-44, 103 S. Ct. 673, 679.

To determine whether the State has violated the defendants' constitutional protections against double jeopardy here, we must make three key determinations: (1) whether the civil forfeitures in the instant cases constitute "punishment" for double jeopardy purposes; (2) whether the civil forfeitures and criminal prosecutions constitute punishment for the same offenses; and (3) whether the civil forfeitures and criminal prosecutions are separate proceedings. All three questions must be answered in the affirmative for double jeopardy to ap-

ply. *United States v. Ursery* (6th Cir. 1995), 59 F.3d 568, 571, *cert. granted* (U.S. January 12, 1996), No. 95—345.

### 1. Separate Offenses

To prevail on a double jeopardy challenge, a defendant must establish not only the existence of two punishments, but also that he has been punished twice for the same offense. (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10.) *Amicus curiae* argues that the civil forfeitures and the criminal charges here do not constitute punishment for the same offenses because the forfeitures require proof that the property subject to forfeiture was involved in the commission of a crime, while the criminal charges require proof that defendants committed the crimes. Therefore, *amicus* contends that each offense requires an element the other does not and, consequently, the forfeitures and the criminal prosecutions cannot be considered punishments for the same offenses. *Amicus* also argues with regard to defendants Turner and P.S. that the proceeds which were the subject of the forfeitures in their respective cases were the result of a different violation from the one the defendants were charged with here. Consequently, *amicus* contends that the forfeitures and the criminal charges could not constitute punishment for the same offenses.

We note that neither the State nor the defendants have raised an issue regarding whether the forfeitures and the criminal prosecutions are punishment for the same offenses, although the State did discuss *amicus'* argument during oral argument before this court. We therefore would be justified in not considering the issue raised by *amicus*. (See *People v. P.H.* (1991), 145 Ill. 2d 209, 234; *Archer Daniels Midland Co. v. Industrial Comm'n* (1990), 138 Ill. 2d 107, 117.) However, because the issue is dispositive with respect to defendants Turner and P.S., we choose to address the question at

274

this time. (*Cf. Teague v. Lane* (1989), 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (addressing the issue of retroactivity although issue was raised only by *amicus* brief); see generally *Ursery*, 59 F.3d at 573-74; (addressing whether the civil forfeiture and criminal charges constituted punishment for the same offense); *United States v. One 1978 Piper Cherokee Aircraft, Tail No. 5538V, Including Its Tools & Appurtenances* (9th Cir. 1994), 37 F.3d 489; *United States v. Sherret* (D. Ore. 1995), 877 F. Supp. 519; *Crowder v. United States* (M.D. N.C. 1994), 874 F. Supp. 700; *Quinones-Ruiz v. United States* (S.D. Cal. 1994), 873 F. Supp. 359; *Houston v. Mile High Adventist Academy* (D. Colo. 1994), 872 F. Supp. 829; *United States v. McCaslin* (W.D. Wash. 1994), 863 F. Supp. 1299.

In the context of multiple punishments, the Supreme Court has held that the double jeopardy bar applies if the two offenses for which the defendant is punished or tried violate the "same-elements" test. (*United States v. Dixon* (1993), 509 U.S. 688, 696, 125 L. Ed. 2d 556, 568, 113 S. Ct. 2849, 2856, citing *Blockburger v. United States* (1932), 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180.) The "same-elements" test, commonly referred to as the *Blockburger* test, focuses on "whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment." (*Dixon*, 509 U.S at 696, 125 L. Ed. 2d at 568, 113 S. Ct. at 2856; *People v. Carrillo* (1995), 164 Ill. 2d 144, 147.) Under *Blockburger* and its progeny, if a lesser included offense has been charged, the greater offense cannot subsequently be charged without violating the double jeopardy clause. (*Dixon*, 509 U.S. at 696-97, 125 L. Ed. 2d at 569, 113 S. Ct. at 2857; see also *Harris v. Oklahoma* (1977), 433 U.S. 682, 682, 53 L. Ed. 2d 1054, 1056, 97 S. Ct. 2912, 2913; *Carrillo*, 164 Ill. 2d at 147-48.) Under the *Blockburger* test, then, whether the forfei-

tures and the criminal prosecutions constitute punishment for the same offenses depends on a comparison of the forfeiture allegations and the criminal charges.

In cause No. 78944, defendant Turner was charged with unlawful possession of a controlled substance (720 ILCS 570/402(a)(2) (West 1992)), unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2) (West 1992)), and unlawful possession of a controlled substance without a tax stamp (35 ILCS 520/10 (West 1992)). To support a conviction for unlawful possession of a controlled substance, the State must establish that Turner had knowledge of the substance's presence and that Turner had actual or constructive possession of the substance. (720 ILCS 570/402(a)(2) (West 1992).) In order to convict defendant of unlawful possession of a controlled substance with intent to deliver, the State must establish that defendant had the intent to deliver the controlled substance in addition to the above elements of unlawful possession. (720 ILCS 570/401(a)(2) (West 1992).) For the final charge against Turner, the State would have to establish that Turner was a "dealer," that he possessed a controlled substance, and that he failed to affix the required tax stamp to the controlled substance. (35 ILCS 520/10 (West 1992).) In comparison, the State sought forfeiture of the cash because it was alleged to have been furnished or was intended to have been furnished in exchange for a substance in violation of the Controlled Substances Act or represented the proceeds of such an exchange. (720 ILCS 570/505(a)(5) (West 1992); 725 ILCS 150/7(1) (West 1992).) To establish the basis for the forfeiture, the State relied on the presumption that currency found in close proximity to forfeitable substances was furnished or intended to be furnished in exchange for a substance in violation of the Controlled Substances Act or represented the proceeds of such an exchange. In making the

determination that the cash was subject to forfeiture, the trial judge stated that the cash was the product of illegal activity.

The elements involved in the forfeiture of the cash in Turner's case are clearly distinguishable from the elements the State must prove to convict Turner of the offenses charged. None of the elements necessary to establish forfeiture of the cash are included in the elements needed to establish the three offenses Turner was charged with committing. Therefore, the forfeiture and the criminal prosecution against Turner would not be punishment for the same offense, and the State should be allowed to proceed on the criminal indictment against Turner. Moreover, we note that there is no factual link between the cash as proceeds of a drug transaction and the criminal offenses. The cash was seized during the execution of a search that resulted in the seizure of cocaine which, in turn, was the basis for the above charges being brought against Turner. The cash could not have been traced to the proceeds of any sale of any of the cocaine found in the indictment since defendant is charged with possession of that cocaine, which had not yet been sold. See *United States v. Leaniz* (S.D. Ohio March 31, 1995), No. CR—2—90—18; see also 1 D. Smith, Prosecution & Defense of Forfeiture Cases § 12.10(3), at 12—157 (1995); *United States v. 1181 Waldorf Drive, St. Louis, Missouri* (E.D. Mo. 1995), 900 F. Supp. 1167, 1173.

A similar result is reached in cause No. 78910 with respect to P.S. Defendant P.S. was charged with unlawful possession of cannabis (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 704(d)) and unlawful possession of cannabis with intent to deliver (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 705(d)). The State sought forfeiture of $1,627.22 on the basis that it was in close proximity to forfeitable substances and drug paraphernalia. The proximity of the

cash to forfeitable substances gives rise to the presumption that it was furnished or intended to be furnished in exchange for a substance in violation of the Cannabis Control Act, or was the proceeds of such an exchange, and therefore forfeitable under the Forfeiture Act. (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, pars. 712, 1677.) The charged offenses and the forfeiture proceedings each require proof of different elements. Therefore, the charges against P.S. are based on offenses that are distinct from the forfeiture. The forfeiture of the cash consequently does not present a bar to P.S.'s trial on the criminal charges, and the State should be allowed to proceed with the charges against P.S.

A different result is reached with respect to Kimery, however. Kimery was charged with unlawful possession of a controlled substance. (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 1402(c).) The State sought forfeiture of his automobile, contending it was used to facilitate the sale, receipt, possession and concealment of a controlled substance possessed in violation of the Controlled Substances Act. (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 1505(a)(3).) Any forfeiture under section 505(a)(3) of the Controlled Substances Act, therefore, requires proof of a criminal offense under the Controlled Substances Act. Thus, the State could not confiscate Kimery's vehicle without a showing that he possessed a controlled substance. The criminal offense is therefore subsumed by the forfeiture statute and does not require proof of an element that is not required by the forfeiture action. (*Ursery*, 59 F.3d at 574; see also *One 1978 Piper Cherokee Aircraft*, 37 F.3d at 495; *United States v. Tilley* (5th Cir. 1994), 18 F.3d 295, 297-98; *Oakes v. United States* (E.D. Wash. 1994), 872 F. Supp. 817, 824; *McCaslin*, 863 F. Supp. at 1303.) The only difference between the forfeiture and criminal proceedings is the remedy sought. We therefore find that the civil forfeiture and the criminal conviction are

punishments for the same offense in Kimery's case. To accept *amicus curiae's* argument that the proceedings in Kimery's case involve different elements because one deals with property and the other with people would be in essence to adopt a circular or illusory theory. (See *Oakes*, 872 F. Supp. at 824.) Moreover, the Supreme Court in *Austin* would seem to have set aside the legal fiction that the property, rather than the owner, is the offender. *Austin*, 509 U.S. at 616, 125 L. Ed. 2d at 501, 113 S. Ct. at 2808; see also *McCaslin*, 863 F. Supp. 1299; *Tilley*, 18 F.3d at 297; *United States v. One Parcel of Real Estate Located at Rural Route 9, LaHarp, Illinois* (C.D. Ill. 1995), 900 F. Supp. 1032, 1037.

Because the double jeopardy clause is not implicated in the cases of Turner or P.S., the remainder of our discussion regarding double jeopardy will be limited solely to defendant Kimery.

## 2. Punishment

The Supreme Court has long recognized that double jeopardy does not preclude the imposition of both a criminal and a civil sanction with respect to the same act or omission, provided that the civil sanction does not constitute punishment for double jeopardy purposes. (See *Helvering*, 303 U.S. at 398-99, 82 L. Ed. at 921, 58 S. Ct. at 633; *United States ex rel. Marcus v. Hess* (1943), 317 U.S. 537, 548-52, 87 L. Ed. 443, 451-54, 63 S. Ct. 379, 386-88; *One Lot Emerald Cut Stones v. United States* (1972), 409 U.S. 232, 235-37, 34 L. Ed. 2d 438, 442-43, 93 S. Ct. 489, 492-93; *United States v. One Assortment of 89 Firearms* (1984), 465 U.S. 354, 361-66, 79 L. Ed. 2d 361, 367-71, 104 S. Ct. 1099, 1104-07.) In resolving the question presented in these appeals, we therefore need to determine whether the forfeiture proceedings in question constitute punishment within the meaning of the double jeopardy clause. Three recent United States Supreme Court opinions guide our analysis.

In *Halper,* the Court considered whether and under what circumstances a civil penalty may constitute "punishment" for double jeopardy purposes. (*Halper,* 490 U.S. at 436, 104 L. Ed. 2d at 494, 109 S. Ct. at 1895.) In resolving the issue, the Court first stated that the labels "criminal" and "civil" were not controlling when determining whether a sanction constituted "punishment" for double jeopardy purposes. "The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads." (*Halper,* 490 U.S. at 447, 104 L. Ed. 2d at 501, 109 S. Ct. at 1901.) The Court also noted that it was the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated. (*Halper,* 490 U.S. at 447 n.7, 104 L. Ed. 2d at 501 n.7, 109 S. Ct. at 1901 n.7.) Applying these principles, the Court determined that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." (*Halper,* 490 U.S. at 448, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.) The Court therefore held that the double jeopardy clause barred a defendant who had already been punished from being subjected to an additional civil sanction to the extent that the second sanction could not be characterized as solely remedial but, rather, at least in part, as a deterrent or retribution. *Halper,* 490 U.S. at 448-49, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.

The *Halper* Court then went on to announce a rule in cases, such as the one before it, where a fixed penalty provision subjects an offender to a disproportionate sanc-

tion when compared to the damages he has caused: "Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment." (*Halper*, 490 U.S. at 449, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.) The Court finally noted that its decision did not preclude the State from seeking the full range of civil penalties against a defendant who has previously not been punished for the same conduct nor did it preclude the imposition of the full range of civil and criminal penalties in the same proceeding. *Halper*, 490 U.S. at 450, 104 L. Ed. 2d at 503, 109 S. Ct. at 1903.

Following the decision in *Halper*, the Supreme Court decided *Austin*. At issue in *Austin* was whether the excessive fines clause of the eighth amendment applied to forfeitures for property under sections 881(a)(4) and (a)(7) of the Federal controlled substances forfeiture act. (21 U.S.C.A. §§ 881(a)(4), (a)(7) (West 1981 & Supp. 1994).) These provisions provide for the forfeitures of, respectively, conveyances and real property used, or intended to be used, to facilitate the commission of certain drug-related crimes. Because the eighth amendment limits the government's power to punish, the central question before the Court was whether statutory forfeitures under those provisions were punishment.

After tracing the historical development of civil forfeiture provisions, the Court observed that historically *in rem* forfeitures were understood at least in part as punishment. (*Austin*, 509 U.S. at 619, 125 L. Ed. 2d at 503, 113 S. Ct. at 2810.) The Court then considered

whether forfeitures under sections 881(a)(4) and (a)(7) were properly considered punishment today. The Court found nothing in the provisions at issue or the legislative history that contradicted the historical understanding of forfeitures as punishment. "In light of the historical understanding of forfeiture as punishment, the clear focus of §§ 881(a)(4) and (a)(7) on the culpability of the owner, and the evidence that Congress understood those provisions as serving to deter and to punish, [the Court] [could not] conclude that forfeiture under §§ 881(a)(4) and (a)(7) serve[d] solely a remedial purpose." (*Austin*, 509 U.S. at 621-22, 125 L. Ed. 2d at 505, 113 S. Ct. at 2812.) The Court therefore stated that forfeiture under the provisions at issue constituted punishment. In reaching this determination, the Court rejected the government's arguments that the provisions at issue were remedial because (1) they removed the instruments of a drug transaction and (2) the forfeited assets served to compensate the government for the costs of undertaking law enforcement activities. The Court also stated that even if the forfeiture did serve some remedial purpose, the government's argument still failed because a civil sanction that cannot be found to serve solely a remedial purpose constituted punishment. *Austin*, 509 U.S. at 622, 125 L. Ed. 2d at 505, 113 S. Ct. at 2812.

Finally, the Court in *Kurth Ranch* held that a tax on the possession of illegal drugs assessed after the imposition of a criminal penalty for the same conduct violated the double jeopardy clause. Citing *Halper* and *Austin*, the Court began by noting that criminal fines, civil penalties, civil forfeitures, and taxes all generate government revenues, impose fiscal burdens on individuals, deter certain behavior, and are subject to constitutional constraints. (*Kurth Ranch*, 511 U.S. at 778, 128 L. Ed. 2d at 778, 114 S. Ct. at 1945.) The Court recognized that taxes are generally motivated by revenue-raising

rather than punitive purposes. The Court acknowledged, however, that at times a tax may lose its usual character and approach punishment. The Court characterized the tax statute at issue as punitive because of its unusual features and, thus, found the tax to be punishment for purposes of the double jeopardy clause. *Kurth Ranch*, 511 U.S. at 783, 128 L. Ed. 2d at 781, 114 S. Ct. at 1948.

Based on the above authority, we need to determine whether the forfeiture of Kimery's automobile served, in part, to punish him. If so, the forfeiture will be considered punishment for purposes of the double jeopardy clause. In light of *Austin* and *Kurth Ranch*, we find that the forfeiture of Kimery's car, sought under the provisions of the Forfeiture Act, constitutes punishment for double jeopardy purposes.

A review of the Forfeiture Act establishes that it is patterned after the Federal statute and should be interpreted consistently with the Federal statute. Section 2 of the Forfeiture Act provides:

> "The General Assembly further finds that the federal narcotics civil forfeiture statute upon which this Act is based has been very successful in deterring the use and distribution of controlled substances within this State and throughout the country. It is therefore the intent of the General Assembly that the forfeiture provisions of this Act be construed in light of the federal forfeiture provisions contained in 21 U.S.C. 881 as interpreted by the federal courts, except to the extent that the provisions of this Act expressly differ therefrom." (725 ILCS 150/2 (West 1992).)

We know from *Austin* that forfeitures under sections 881(a)(4) and (a)(7) of the Federal controlled substances forfeiture act are considered punishment. The forfeiture of Kimery's car was brought under the provisions of the Forfeiture Act relating to forfeitures of vehicles used to facilitate the sale, receipt, possession, and concealment of a controlled substance. (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 1505(a)(3).) This provision is similar in all material

aspects to section 881(a)(4) of the Federal forfeiture act. In fact, this court has previously noted the similarity between section 505(a)(3) of the Forfeiture Act and section 881(a)(4) of the Federal act. (See *1988 Mercury Cougar*, 154 Ill. 2d at 33.) Because the legislature has mandated that the provisions of the Forfeiture Act be interpreted consistently with the Federal forfeiture act, we must conclude that the forfeiture of Kimery's car constituted punishment for double jeopardy purposes.

Like 21 U.S.C. § 881 (1988), the objective of the Forfeiture Act is to deter criminal behavior. Section 2 of the Forfeiture Act specifically states that the forfeiture of property used or intended to be used to facilitate the manufacture, sale, transportation, distribution, possession or use of controlled substances will have a "significant beneficial effect in deterring the rising incidence of the abuse and trafficking of such substances within this State." (725 ILCS 150/2 (West 1992).) Moreover, application of the Forfeiture Act's provisions is not triggered unless there is a corresponding criminal violation. Additionally, both the Federal statute and the Forfeiture Act here provide defenses for innocent offenders or interest holders in the property forfeited. (See 21 U.S.C.A. § 881(a)(4)(C) (West 1981 & Supp. 1994); 725 ILCS 150/8 (West 1992).) The presence of the innocent-owner defense demonstrates the Forfeiture Act's focus on the culpability of the owner and further supports our finding that the forfeiture at issue constitutes punishment. Because of the similarities between the forfeiture provisions at issue here and in *Austin*, we conclude that the forfeiture of Kimery's car constitutes punishment for double jeopardy purposes. Because of our disposition in the cases of P.S. and Turner, it is not necessary for us to decide whether forfeiture of proceeds of a drug transaction constitutes punishment for double jeopardy purposes.

The State attempts to avoid our conclusion that the forfeiture at issue constitutes punishment by raising several arguments, all of which we reject. First, the State argues that we should follow our decision in *1988 Mercury Cougar* which mandates a different result from what is reached here. The State also contends that neither *Austin* nor *Kurth Ranch* requires this court to deviate from *1988 Mercury Cougar*. In *1988 Mercury Cougar*, this court held that the double jeopardy clause did not bar the government from bringing a civil action for forfeiture of an instrumentality of crime subsequent to a criminal conviction for the same offense. This court reasoned that the forfeiture of an instrumentality of a crime would not violate the double jeopardy clause because the sanction in a forfeiture proceeding is not imposed upon a person, but rather is directed at the property. Moreover, this court found that the forfeiture of an instrumentality of crime is always remedial. (*1988 Mercury Cougar*, 154 Ill. 2d at 35.) While our decision in *1988 Mercury Cougar* may have been valid at the time, the Supreme Court's decisions in *Austin* and *Kurth Ranch* have invalidated this court's distinction for holding that civil forfeitures are not punishment. (See *Austin*, 509 U.S. at 615 n.9, 125 L. Ed. 2d at 501 n.9, 113 S. Ct. at 2808 n.9 (noting that forfeiture proceedings historically have been understood as imposing punishment despite their *in rem* nature); see also *State v. 1979 Cadillac Deville* (La. App. 1994), 632 So. 2d 1221, 1225 n.3; *McCaslin*, 863 F. Supp. at 1302.) To the extent that *1988 Mercury Cougar* is inconsistent with the opinion in this case, it is overruled.

The State's attempt to distinguish *Austin* by arguing that *Austin* only applies in the eighth amendment context is also unpersuasive. In resolving whether the eighth amendment protections applied in that case, the *Austin* Court found it necessary to determine whether

the forfeiture at issue constituted punishment. Only after making this determination did the Court then determine whether the eighth amendment protections applied. Moreover, *Austin* used the "solely remedial" test employed by *Halper*, a double jeopardy case, in resolving the issue before the Court. A fair reading of *Austin* is that it resolves the "punishment" issue with respect to forfeitures for double jeopardy purposes. Moreover, the majority of courts from other jurisdictions have held that the *Austin* analysis applies in the fifth amendment context. See, *e.g.*, *United States v. Baird* (3d Cir. 1995), 63 F.3d 1213, 1216, *petition for cert. filed* (U.S. September 17, 1995), No. 95—630, 64 U.S.L.W. 3318; *Ursery*, 59 F.3d at 573; *1978 Piper Cherokee Aircraft*, 37 F.3d at 495; *United States Currency*, 33 F.3d at 1219; *Oakes*, 872 F. Supp. at 826; *McCaslin*, 863 F. Supp. at 1302; *1979 Cadillac Deville*, 632 So. 2d at 1228; *Fant v. State* (Tex. Ct. App. 1994), 881 S.W.2d 830, 834; *State v. Clark* (1994), 124 Wash. 2d 90, 99-100, 875 P.2d 613, 617.

We also find that the State's argument that *Kurth Ranch* does not apply to the forfeiture proceedings because it involved a tax is equally unavailing. Although *Kurth Ranch* involved a tax on drugs, the decision provides guidance in dealing with double jeopardy questions in the civil forfeiture context. If the tax in *Kurth Ranch* could run afoul of the double jeopardy clause, then a civil forfeiture, which is readily characterized as a sanction for criminal conduct, might also run afoul of the clause.

Finally, the State argues that if this court determines that the forfeiture constituted punishment we need to apply the proportionality test of *Halper* to determine the fairness of the forfeiture. We do not believe, however, that such a test is applicable in the present case. *Austin* appears to have specifically rejected

a case-by-case approach, opting for a more categorical approach to forfeitures of conveyances used to facilitate the transportation, etc., of contraband. In *Austin*, the Supreme Court found that the "rational-relation" test of *Halper* was inapplicable in the forfeiture setting there, and instead looked to the purpose behind the forfeiture statute itself. Further, *Austin* distinguished the civil sanction at issue in *Halper* from the forfeiture at issue before it by noting that "*Halper* involved a small, fixed-penalty provision, which 'in the ordinary case ... can be said to do no more than make the Government whole.' " (*Austin*, 509 U.S. at 622 n.14, 125 L. Ed. 2d at 505 n.14, 113 S. Ct. at 2812 n.14, quoting *Halper*, 490 U.S. at 449, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.) In contrast, the Court in *Austin* found that the value of the conveyance and real property forfeitable under sections 881(a)(4) and (a)(7) varied so dramatically that any relationship between the government's actual costs and the amount of the sanction was merely coincidental. Moreover, *Halper* involved a civil penalty whose remedial purpose was to compensate the government for the fraudulent acts perpetrated on it, while the purpose of the forfeitures at issue in *Austin* was to remove an instrumentality of a drug transaction. The categorical approach of *Austin* therefore would appear to obviate the need for this court to compare the value of the forfeited property to the government's damages and costs in this case. See *People v. Perez* (5th Cir. November 21, 1995), No. 94—60788, slip op. at 6; but see *Johnson v. State* (Tex. Ct. App. 1994), 882 S.W.2d 17, 19-20; *State v. Borromeo* (4th Cir. 1993), 1 F.3d 219, 220-21.

### 3. Separate Proceedings

Because the double jeopardy clause prohibits punishing a defendant more than once in separate proceedings, we must also determine whether the civil forfeiture proceeding in the instant case was separate from

the criminal proceeding initiated against Kimery. The State argues that the forfeiture and criminal proceedings against Kimery were not separate, but rather were part of a single, coordinated prosecution of Kimery. As a result, the State contends that the double jeopardy clause was not violated. In support of its argument, the State cites *United States v. Millan* (2d Cir. 1993), 2 F.3d 17, and *United States v. One Single Family Residence Located at 18755 North Bay Road, Miami* (11th Cir. 1994), 13 F.3d 1493, each decided prior to *Kurth Ranch* and holding that civil forfeiture and criminal cases pursued as part of a coordinated effort amounted to a single proceeding for double jeopardy purposes.

The Supreme Court has made clear that the government may "seek[ ] and obtain[ ] both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding," provided that the total punishment does not exceed that authorized by the legislature. (*Halper*, 490 U.S. at 450, 104 L. Ed. 2d at 503, 109 S. Ct. at 1903; see also *Missouri v. Hunter* (1983), 459 U.S. 359, 366, 74 L. Ed. 2d 535, 542, 103 S. Ct. 673, 678.) Courts have employed varying approaches to determine when a civil forfeiture action and a parallel criminal prosecution can properly be considered components of a single proceeding so that the double jeopardy clause is not implicated. The courts have reached different results.

The Second and Eleventh Circuits have held that parallel criminal and civil forfeiture actions constitute a single proceeding which does not implicate double jeopardy concerns. (See *Millan*, 2 F.3d at 20-21; *One Single Family Residence*, 13 F.3d at 1499.) In deciding that parallel civil and criminal actions constitute a single proceeding, the Second Circuit in *Millan* relied on the following factors: (1) warrants for the civil seizures and criminal arrests were issued on the same day, by the

same judge, and were based on the same affidavit; (2) a stipulation entered into by the government and defendants included both the property seized in the civil forfeiture and named in the criminal indictment; (3) the forfeiture complaint incorporated the criminal indictment; and (4) the defendants were aware of the criminal charges against them when they entered into the stipulation. (*Millan*, 2 F.3d at 20.) In resolving the issue, the court also stated that it did not find dispositive the fact that the civil and criminal actions were filed separately with their own docket number, noting that under the Federal system civil and criminal suits had to be filed and docketed separately. "Therefore, courts must look past the procedural requirements and examine the essence of the actions at hand by determining when, how, and why the civil and criminal actions were initiated." (*Millan*, 2 F.3d at 20.) The court further noted that one of the Supreme Court's concerns in *Halper* was that the government might act abusively in seeking a second punishment when it was dissatisfied with the punishment levied in the first action. The court in *Millan* noted, however, that such a concern was not present in that case because the civil and criminal actions were contemporaneous, not consecutive, and the parties were fully aware that the government intended to pursue all criminal and civil remedies against them regardless of the outcome of the proceeding. *Millan*, 2 F.3d at 20; accord *One Single Family Residence*, 13 F.3d at 1499 (relying in part on *Millan* in finding that the double jeopardy clause was not implicated when the government pursued simultaneous criminal and civil sanctions against a defendant within a single, coordinated prosecution); *United States v. Smith* (N.D. Ala. 1995), 874 F. Supp. 347, 350 (following *Single Family Residence*).

In contrast, other circuits have rejected the view expressed in *Millan* and have instead concluded that

civil forfeiture actions and parallel criminal prosecutions constitute separate proceedings for double jeopardy purposes. (See *United States v. Torres* (7th Cir. 1994), 28 F.3d 1463, 1465; *United States Currency*, 33 F.3d at 1216-18; see also *Ursery*, 59 F.3d at 575.) In reaching the above conclusion, the Ninth Circuit in *United States Currency* stated:

> "We fail to see how two separate actions, one civil and one criminal, ins··tuted at different times, tried at different times before different factfinders, presided over by different district judges, and resolved by separate judgments, constitute the same 'proceeding.' In ordinary legal parlance, such actions are often characterized as 'parallel proceedings,' but not as the 'same proceeding.' A forfeiture case and a criminal prosecution would constitute the *same* proceeding only if they were brought in the same indictment and tried at the same time." (Emphasis in original.) (*United States Currency*, 33 F.3d at 1216.)

Although both proceedings resulted from the same violation of law, the court stated that it was unwilling to "whitewash the double jeopardy violation in this case by affording constitutional significance to the label of 'single, coordinated prosecution.'" *United States Currency*, 33 F.3d at 1217.

The apparent inconsistencies between the Ninth and Second Circuits' approaches may depend more on factual and procedural differences in the cases rather than a fundamental difference in double jeopardy analysis. However, the Ninth Circuit's rationale in *United States Currency* does suggest that parallel civil and criminal proceedings will always violate the double jeopardy clause (see *United States Currency*, 33 F.3d at 1216 ("A forfeiture case and a criminal prosecution would constitute the *same* proceeding only if they were brought in the same indictment and tried at the same time" (emphasis in original)); see also *Ursery*, 59 F.3d at 575), while under the Second Circuit's approach, parallel proceedings, although literally separate, may under

certain circumstances constitute a single proceeding for double jeopardy purposes. The Second Circuit's approach, however, may be undercut by *Kurth Ranch* in which the civil and criminal prosecutions were filed contemporaneously, but were considered separate proceedings by the Supreme Court. See *Kurth Ranch*, 511 U.S. at 781 n.21, 128 L. Ed. 2d at 780 n.21, 114 S. Ct. at 1947 n.21 (remarking that the case involved separate sanctions imposed in successive proceedings); see also *McCaslin*, 863 F. Supp. at 1304; 1 D. Smith, Prosecution & Defenses of Forfeiture Cases § 12.10, at 12—141 n.33 (1995).

In the present case, we find that insofar as the existence of a "single coordinated proceeding" would satisfy the requirements of the double jeopardy clause, the facts in the present case fail to reveal such a single, coordinated proceeding. (*Ursery*, 59 F.3d at 575.) Here, the State brought and tried the civil forfeiture action completely separately from the criminal prosecution. The actions were initiated and docketed separately. The State sought to try the actions at different times and before different judges which resulted in separate judgments against defendant. The civil forfeiture complaint did not incorporate the criminal indictment, nor did it refer to the indictment. Moreover, the cases were handled by different attorneys from the State's Attorney's office, and there is no indication in the record of any communication between the prosecuting authorities in the forfeiture and criminal cases. The only coinciding factor between the forfeiture and criminal proceedings was that they were based on the same offense. This factor alone, however, is insufficient to support a determination that the actions in question were part of a single proceeding, even under the Second Circuit's analysis. Moreover, we find that the fact the State instituted and proceeded with the forfeiture ac-

tion against defendant before it knew the outcome of the criminal proceedings is also not outcome determinative. (See *McCaslin*, 863 F. Supp. at 1305 (asserting that the prosecutor's state of mind cannot determine whether a defendant has been placed in double jeopardy).) Based on the foregoing discussion, we conclude that the forfeiture proceeding was separate from the criminal proceeding and not part of a single, coordinated procedure. See *1979 Cadillac Deville*, 632 So. 2d at 1229; *Oakes*, 872 F. Supp. at 824-25.

Because we have found double jeopardy applies in Kimery's case, we hold that further prosecution of Kimery following the forfeiture of his vehicle was prohibited by the double jeopardy clause.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court in Turner's case, cause No. 78944, and remand to the circuit court for further proceedings consistent with this opinion. We also reverse the judgment of the appellate court in cause No. 78910 with respect to P.S. and remand to the circuit court for further proceedings consistent with this opinion. With respect to Kimery in cause No. 78910, we affirm the judgment of the appellate court.

> *No. 78910—Appellate court judgment affirmed in part and reversed in part; cause remanded.*
> *No. 78944—Appellate court judgment reversed; cause remanded.*

JUSTICE HARRISON took no part in the consideration or decision of this case.